IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE ATLANTA FALCONS
FOOTBALL CLUB LLC, et al.,

   Plaintiffs,

    v.

THE NATIONAL FOOTBALL
LEAGUE PLAYERS
ASSOCIATION, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-753-TWT

ORDER

This is an action to confirm an arbitration award. It is before the Court on the Plaintiffs' Motion to Confirm the Arbitration Award [Doc. 27] and the Defendants' Motion to Vacate the Arbitration Award [Doc. 16]. For the reasons set forth below, the Plaintiffs' Motion to Confirm the Arbitration Award [Doc. 27] is GRANTED and the Defendants' Motion to Vacate the Arbitration Award [Doc. 16] is DENIED.

I. Background

This dispute began when the Defendant former professional football players Roderick Coleman, Wilrey Fontenot, Tony Gilbert, Kindal Moorehead, Stanley Pritchett, Karon Riley, Brett Romberg, Jason Webster, and Dez White (the "Players") filed for workers' compensation benefits in California. The Plaintiffs, the Atlanta

Falcons Football Club LLC and the National Football League Management Council ("NFLMC"), alleged the Defendants' filings in California violated the Players' contracts which were made under the collective bargaining agreement between the NFLMC and the Defendant National Football League Players' Association ("NFLPA"). Pursuant to the bargaining agreement, the Plaintiffs initiated binding arbitration.

In the arbitration award, the arbitrator first listed the workers' compensation provisions of each Players' contract. (Compl. Ex. B, the "Award," at 3). Player Coleman's contract had a clause which stated:

> Player and Club acknowledge and agree that the exclusive jurisdiction for resolving injury related claims shall be the Division of Workers' Compensation of Georgia, and in the case of Workers' Compensation claims, the Georgia Workers' Compensation Act shall govern, regardless of the location or situs of injury giving rise to the dispute.

(Id.) Players Fontenot, Gilbert, and Romberg held contracts stating that disputes:

> shall be governed by and construed in accordance with the laws of the state in which [the] Club is located, including without limitation, workers' compensation disputes. Jurisdiction of all workers' compensation claims and other matters related to workers' compensation, ... and including all issues of law, issue [sic] of fact and matters related to workers' compensation benefits, shall be exclusively determined by and exclusively decided in accordance with the internal laws of the state in which [the] Club is located, including, without limitation, its labor code and workers' compensation laws, without resort to choice of law rules, regardless of the location or situs of the injury giving rise to the dispute.

(Award, at 4). Likewise, Players White, Riley, Webster, and Pritchett's contracts stated that "the exclusive jurisdiction for resolving injury related claims shall by [sic] the Division of Workers' Compensation of Georgia, and in the case of Workers' Compensation claims the Georgia Workers' Compensation Act shall govern." (Award, at 4-5). Each of the Players was employed by the Falcons for varying periods from 2002 to 2010. (Compl. ¶¶ 7-15). The Falcons are based in Georgia, play their home games in Georgia, and conduct practices in Georgia. During the Players' employment, the Falcons played four of their 186 professional football games in California.[1] The Players argue their injuries are cumulative and were sustained in part from their games in California. (See Compl. ¶¶ 20, 22, 24, 26, 28, 30, 32, 34, & 36).

The arbitrator concluded, after reviewing prior National Football League arbitration awards to determine the "law of the shop," that the NFLMC was entitled to enforce the choice of law and choice of forum provisions contained in the individual contracts. (Award, 7-12). The Award accordingly ordered the Players to cease and desist from bringing their claims under the California workers'

---

[1] The Court takes judicial notice of the Atlanta Falcons' schedule from 2002-2010, available at http://www.nfl.com/teams/atlantafalcons/schedule?team=ATL&season=2002&seasonType=REG, because this information is "not subject to reasonable dispute" and is available "by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see Florida Evergreen Foliage v. E.I. DuPont De Nemours and Co., 336 F. Supp. 2d 1239, 1262 n.21 (S.D. Fla. 2004), *aff'd*, 470 F.3d 1036 (11th Cir. 2006) (taking judicial notice of information on a party's website).

compensation regime. (Id. at 12). The arbitrator did not review state or federal public policy in issuing the Award; he only enforced the agreements as written. (Id. at 11). The Plaintiffs seek to confirm the Award, while the Defendants argue the Award violates state and federal public policy.

## II.  Motion to Vacate Standard

"An arbitration award pursuant to an arbitration provision in a collective bargaining agreement is treated as a contractual obligation that can be enforced through a § 301 [Labor Management Relations Act] lawsuit." United Steel v. Wise Alloys, LLC, 642 F.3d 1344, 1349 (11th Cir. 2011) (citing Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 451 (1957)). "When faced with a motion to vacate under § 301, '[a] court may not vacate an arbitral award unless it is irrational, exceeds the scope of the arbitrator's authority, or fails to draw its essence from the collective bargaining agreement.'" Wise, 642 F.3d at 1352-53 (quoting IMC-Agrico Co. v. Int'l Chem. Workers Council of the United Food & Commercial Workers Union, 171 F.3d 1322, 1325 (11th Cir. 1999) (internal quotation marks and citation omitted)). A court may also refuse to confirm an arbitral award that violates public policy. Delta Air Lines, Inc. v. Air Line Pilots Asso., 861 F.2d 665, 670 (11th Cir. 1988). However, the Court's refusal to enforce such an award must be based on "some explicit public policy that is well-defined and dominant, and is to be

ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Id. (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987) (internal quotation marks omitted)). The party seeking to vacate an arbitration award bears the burden of setting forth sufficient grounds to support the vacatur. O.R. Securities, Inc. v. Professional Planning Assoc., 857 F.2d 742, 748 (11th Cir. 1988).

### III.  Discussion

Preliminarily, the Plaintiffs contend that the Defendants are time-barred from seeking to vacate the arbitration award because they did not seek to vacate the award within the three-month window set forth in United Steel v. Wise Alloys, LLC, 642 F.3d 1344, 1352 (11th Cir. 2011).  The Award was issued on February 23, 2012, and the Defendants did not seek to vacate the Award until June 6, 2012, when they filed their answer and a motion to vacate.  However, on April 13, 2012, this Court issued an order granting an extension of time to the Defendants "within which to answer or otherwise respond" to the Plaintiffs' complaint.  See Order Granting Motion for Extension of Time [Doc. 5].  The Defendants filed their answer and motion to vacate pursuant to this extension.  The Plaintiffs argue that the Defendants' motion was nevertheless untimely because the decisions in Wise and its predecessors contemplate untimely motions to vacate contained within otherwise timely responses.  See Wise,

642 F.3d at 1354-55. Given the common practice of attaching motions to vacate with initial responses, the Court concludes that the Order granting an extension also applied to the motion to vacate. The Defendants' motion to vacate will not be dismissed as untimely.

As noted, a court may only vacate an arbitral award based on public policy if the award runs contrary to "some explicit public policy that is well-defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Delta Air Lines, 861 F.2d at 670 (quoting Misco, 484 U.S. at 43 (internal quotation marks omitted)). The Defendants argue that the Award here violates Georgia, national, California, and federal labor public policy, as well as the Full Faith and Credit Clause.[2] The Plaintiffs argue that California public policy is irrelevant, and that Georgia, national, California, and federal labor public policy are not offended by the Award. These arguments will be addressed in turn.

    A. <u>Georgia Public Policy</u>

---

[2] Specifically, the Defendants argue that the choice of law and choice of forum clause at issue here "violated well-established public policy" and is "also contrary to Georgia public policy." (See Pls.' Mot. to Vacate Arb. Award, at 14, 25). The Defendants further argue that "federal labor policy does not permit employers and employees to waive minimum labor standards set by the states" and that "even a state may not limit another state's right to provide workers' compensation for injuries within its borders." (See id. at 27-30).

The Defendants contend that the Award violates Georgia public policy. Specifically, the Defendants identify two Georgia statutes among the Georgia workers' compensation regime that prevent the contractual waiver of coverage and contemplate stacking the awards of other states. See O.C.G.A. §§ 34-9-10 & 34-9-242. These two statutes, however, do not describe an "explicit, well-defined, and dominant" public policy against confirming this Award. Section 34-9-10 states that "[n]o contract or agreement, written, oral, or implied, nor any rule, regulation, or other device shall in any manner operate to relieve any employer in whole or in part from any obligation created by this chapter except as otherwise expressly provided in this chapter." O.C.G.A. § 34-9-10. Here, the Award in no way relieves the employer – the Falcons – of obligations created by the Georgia workers' compensation law. Indeed, the Award makes it more likely the Players will seek benefits in Georgia. Likewise, O.C.G.A. § 34-9-242 provides that "[i]f an employee shall receive compensation or damages under the laws of any other state, nothing contained in this Code section shall be construed so as to permit a total compensation for the same injury greater than is provided for in this chapter." O.C.G.A. § 34-9-242. Again, there is no indication that the Award will allow the Players to receive more than the total compensation provided for in the chapter. Indeed, limiting the Players to the Georgia system will serve to ensure that the total compensation received does not exceed the

total sum provided by the Georgia statutes. Neither of these statutes articulate an explicit, well-defined, and dominant Georgia public policy against an arbitration award preventing the Players from seeking workers' compensation benefits in California.

Next, the Defendants contend that Hartford Acc. & Indem. Co. v. Welker, 75 Ga. App. 594 (1947), articulated a public policy against contractual limitations on workers' compensation benefits. In Hartford, the Georgia Court of Appeals declined to enforce a contractual provision mandating the application of the Illinois workers' compensation system. The injured employee had been stationed near Atlanta for five years, resided in Georgia, was injured in Georgia, and held duties overseeing salesmen in five southeastern states. There was no connection to Illinois outside the contract. The Court held it was against Georgia public policy to force the injured employee to seek workers' compensation in Illinois and held the contract provision unenforceable. See id. at 596-99. Contrary to the Defendants' contentions, this case does not reveal "Georgia's strong public policy against choice-of-law and choice-of-forum provisions in employment contracts." (Defs.' Br. in Opp. to Pls.' Mot. to Confirm Arb. Award, at 11). Rather, the case suggests it might violate Georgia public policy to contract out workers' compensation liability to another state with which there are very few contacts when the contacts with Georgia are extensive. The case does little to inform

the instant dispute, where the Players are seeking to invoke the California compensation system when they have extensive contacts in Georgia. The Defendants offer no further evidence of an "explicit, well-defined, and dominant" Georgia public policy that would counsel against confirming the Award. Accordingly, the Court concludes that Georgia public policy would not be offended by the confirmation of the Award.

B.  National Public Policy

Next, the Defendants argue that the Award violates "well-established public policy." (Defs.' Br. in Supp. of Mot. to Vacate Arb. Award, at 14). To support this argument, the Defendants cite the Restatement (2d) of Conflicts of Laws, Larson's Workers' Compensation Law and another treatise, along with case law from Pennsylvania and Maryland. The Restatement and the treatises cited, which state that private agreements generally cannot deprive workers' compensation courts of jurisdiction they would otherwise have, are insufficient to establish public policy. These sources are not explicit, well-defined, and dominant policies under Misco because Misco specifically directs that public policy "is to be ascertained by reference to the laws and legal precedents," not summaries or treatises.

The Defendants cite McIlvaine Trucking, Inc. v. Workers' Compensation Appeal Bd. (States), 810 A.2d 1280 (Pa. 2002), for the proposition that employers of

employees who carry out duties in several states cannot limit workers' compensation to a single state.  In McIlvaine, the employer was headquartered in Ohio and operated in Ohio, Pennsylvania, Virginia, and West Virginia.  The employee had signed an agreement to be bound by the West Virginia workers' compensation system.  The employee was injured while on duty in Pennsylvania and sought workers' compensation benefits in that state.  The court, after exploring the statutory landscape, concluded that the provision providing for workers' compensation coverage for out-of-state injuries "does not permit parties by agreement to overcome the Act's coverage pertaining to a subsequent, in-state injury," for which there was a specific provision. Id. at 1286.  Because the injury at issue occurred in Pennsylvania, the court concluded that the agreement should be voided because it was in conflict with the compensation act's express legislative directive that the regime covers in state injuries.  Id.

     Contrary to the Defendants' contention, McIlvaine does not represent a public policy against limitations of workers' compensation coverage.  The court there only held that an employee injured in Pennsylvania is entitled to compensation under the Pennsylvania regime pursuant to the Pennsylvania statutes.  Indeed,  the court recognized that "at least two state workers' compensation schemes would appear to permit an employer and employee to select another state's law as the employee's exclusive remedy irrespective of the place of injury."  Id. (citing Ohio Rev. Code Ann.

§ 4123.54; W. Va. Code § 23-2-1(c)(a)).  This case does not represent a dominant and explicit public policy that counsels against confirming the Award.

Likewise, the decision of the Maryland Supreme Court in Pro-Football, Inc. v. Tupa, — A.3d —, 2012 WL 3588820 (Md. 2012), does not describe a public policy against agreements that limit the states that employees can seek workers' compensation benefits.  In that case, an injured professional football player sought workers' compensation benefits in Maryland despite a contractual clause requiring the player to seek benefits in Virginia.  The player had played for the Washington Redskins which held its home games in Maryland but held its practices in Virginia.  The court concluded that the plain language of the Maryland workers' compensation statute, which prevented an employee from waiving benefits due under the Maryland statute, rendered the contract provision unenforceable.  Like McIlvaine, this case does not stand for the broad policy pronouncements the Defendants contend, it only held that a professional football who played approximately half of his professional games in Maryland could seek compensation under the Maryland compensation regime despite his contractual agreement.  This case does not represent a well-defined public policy against contracts limiting the states in which a player can seek workers' compensation benefits.

Similarly, the decision in Miami Dolphins, Ltd. v. Newson, 783 F. Supp. 2d 769 (W.D. Pa. 2011), does not support the Defendants' position. In Newson, a player for the Miami Dolphins was injured while playing football for the Dolphins in Pennsylvania. The player filed for benefits under the Pennsylvania workers' compensation regime despite his contract that seemed to say he could only file for benefits in Florida. The team instituted arbitration proceedings against the player and simultaneously sought an injunction against the state compensation proceedings. The state proceedings had already led to preliminary orders including one where the workers' compensation judge "expressly held that, under Pennsylvania law, the Commonwealth's statutory workers' compensation provisions apply to all work-related injuries incurred in Pennsylvania and that this benefit is protected against/immune from private contract waiver by an employer or his union." Id. at 773. The arbitration was ongoing, and the district court refused to stay the state court proceedings. The court held that "[a]s any preemption of State court jurisdiction in favor of an agreement to arbitrate statutory claims requires a 'clear and unmistakable waiver' of the employee's right, that right is not preempted while this contract interpretation arbitration proceeds." Id. at 779. While Newson confirmed the holding in McIlvaine that an employee injured in Pennsylvania cannot waive his rights under the Pennsylvania workers' compensation regime, its does not otherwise assist the

Defendants. Indeed, the court's acknowledgment that State court jurisdiction would be preempted if the contract did show a "clear and unmistakable" waiver suggests courts are willing to subordinate statutory workers' compensation claims to valid contractual workers' compensation limitations, and the Award here is simply implementing the Players' contractual waiver.

The above authorities indicate that some contractual provisions limiting the state where an employee can seek workers' compensation benefits are unenforceable. However, the fact that the above cases are distinguishable from the present case – where the Players have not argued they were specifically injured in California and only played four of 186 games there – shows that the authorities do not represent an explicit, well-defined, and dominant public policy against confirming the Award.

C. California Public Policy

Finally, the Defendants cite the California workers' compensation regime as well as California and United States Supreme Court cases in arguing that the Award violates California public policy. As the court noted in Chicago Bears Football Club, Inc. v. Haynes, 816 F. Supp. 2d 534, 538 (N.D. Ill. 2011), a case very similar to this one, it is unclear "why [] California's public policy [is] relevant at all."[3] However,

---

[3] The court in Haynes reached the same conclusion this Court reaches here. In Haynes, three former professional football players sought California workers' compensation benefits despite clauses in their contracts requiring the players to seek benefits in Illinois. The employing football team and the NFLMC instituted

because the Court concludes that California policy is not offended by the Award, it need not determine the relevance of California policy.

The Court is guided by the Ninth Circuit's recent opinion in Matthews v. National Football League Management Council, 688 F.3d 1107 (9th Cir. 2012), which dealt with facts very similar to the facts here and ultimately confirmed an arbitration award preventing the players from seeking California workers' compensation benefits. The plaintiff in Matthews was a professional football player who played for teams in Texas and Tennessee from 1983 to 2002. In 2008, he filed for workers' compensation benefits in California, alleging disability from 19 years of playing professional football at various locations, although not alleging any specific injury in California. The NFLMC filed a grievance and the parties entered arbitration. As here, the arbitrator held that filing for workers' compensation benefits in California violated the agreement between the player and the team which required the player to seek workers'

---

arbitration, and, as here, the arbitrator enforced the contracts as written and ordered the players to stop seeking benefits in California. The NFLMC sought to confirm the award in district court, and the players moved to vacate the award. The court rejected the players' argument that the award violated California public policy because the players "have not established any basis for concluding that the [contracts] must conform to the public policy of California." Haynes, 816 F. Supp. 2d at 539. The court next rejected the argument that the award violates federal labor policy by derogating state minimum standards because the contracts specifically adopt Illinois state standards. Id. at 540. Finally, the court concluded that the Full Faith and Credit Clause did not prohibit the forum restrictions in the contracts. Id.

compensation benefits in Tennessee.  The arbitrator ordered the player to cease and desist, and the player filed suit to vacate the award.

The court first explored the plaintiff's claim that the award violated California public policy.  The court disagreed with the plaintiff on the scope of California workers' compensation laws:

> Rather than guarantee a universal right to seek California workers' compensation benefits, the workers' compensation statute establishes a rule that an employee who is otherwise eligible for California benefits cannot be deemed to have contractually waived those benefits, and an employer who is otherwise liable for California benefits cannot evade liability through contract.

Id. at 1111-12 (citing Cal. Labor Code §§ 3600(a)(1); 5000; 2804).  Incorporating the standards for vacating an arbitral award, the court stated:

> To establish that the arbitration award here violates California policy, [plaintiff] must show that his workers' compensation claim comes within the scope of California's workers' compensation regime... Because of our highly limited and deferential standard of review of arbitration awards, it must be *clear* that [plaintiff] is within the category of injured employees to which California workers' compensation law extends.

Id. at 1112.  The court refuted the player's claims that Alaska Packers Ass'n v. Industrial Accident Comm'n of Cal., 294 U.S. 532 (1935), and Pacific Employers Ins. Co. v. Industrial Accident Comm'n of Cal., 306 U.S. 493 (1939), required the arbitration award to be vacated because the contacts with California in those cases were explicit.  The court concluded that the plaintiff in Alaska Packers clearly

demonstrated his eligibility for California benefits because his employment agreement was formed in California. Matthews, 688 F.3d at 1112 (quoting Alaska Packers Ass'n v. Industrial Accident Comm'n of Cal., 1 Cal. 2d 250, 255-57 (1934), *aff'd*, 294 U.S. 532 (1935)). The court further noted that the plaintiff in Pacific Employers could have been eligible for California workers' compensation benefits because he was injured in California during the course of his duties, despite the fact that he did most of his work in Massachusetts. Id. (quoting Pacific Employers, 10 Cal. 2d at 576); see also Haynes, 816 F. Supp. 2d at 538 ("[I]n each of the cases or arbitral decisions declining to enforce a contractual provision that waived an employee's right to pursue a claim under California's workers' compensation statute, the basis for considering California's public policy was explicit.").

Reviewing the facts, the Matthews court noted that the plaintiff alleged injuries from "various" locations but did not allege a specific injury in California, did not allege a need for medical services in California, and did not attempt to prove injury in California. Id. at 1113. In his briefs, the plaintiff had argued that all the games in his career – including only 13 games in California over a 19 year career – contributed to his injury. The court stated that "[t]he facts underlying [plaintiff's] claim are distinct enough from existing California cases that we cannot say whether the California courts would consider Matthews' limited contacts with the state sufficient

to justify the application of California law." Id. at 1114; see also Booker v. Cincinnati Bengals, No. ADJ4661829, 2012 Cal. Wrk. Comp. P.D. LEXIS 114 (May 1, 2012) (concluding that the California Workers' Compensation Board may not have jurisdiction over claim of professional football player who played one of thirty-two games in California and that, even if the board had jurisdiction, it would decline to exercise it). The court concluded that "this uncertainty is fatal to [plaintiff's] claim" because he had not clearly shown he was entitled to California benefits and therefore had not shown that the award was "contrary to a clear, well-defined and dominant public policy of the state of California." Id.

Here, the analysis is similar. During the period the Players were employed by the Falcons, the Falcons played four of 186 games in California, roughly two percent of their games. The Players, like the plaintiff in Matthews, argue in their briefs that their injuries are cumulative and are partially the result of games played in California, but they have not shown that they were explicitly injured in California. Like Matthews, the facts surrounding the Players' injuries do not conclusively establish whether the California workers' compensation regime would have jurisdiction. And, as in Matthews, "this uncertainty is fatal" to the Players' claims. Matthews, 688 F.3d at 1114. The Players have not shown an "explicit, well-defined, and dominant public policy" in California against arbitral awards enforcing agreements to seek workers'

compensation benefits in Georgia instead of in California when the Players only have a limited connection with California.

### D. Federal Labor Policy

The Defendants contend that the Award violates federal labor policy because it bargains away state minimum labor standards. However, as has been shown above, the Award does not violate the minimum labor standards of Georgia or California. Accordingly, federal labor policy is not offended. See Matthews, 688 F.3d at 1115 (concluding that federal labor policy was not offended because California public policy was not offended); Haynes, 816 F. Supp. 2d at 540 (nothing cited by the players "evinces an 'explicit,' 'well-defined,' and 'dominant' federal labor policy requiring that the workers' compensation regime of a state foreign to the employment relationship must prevail over those of a state in which that relationship was formed, and which, moreover, was explicitly selected by the parties.").

### E. The Full Faith and Credit Clause

Finally, the Defendants argue that the Award violates the Full Faith and Credit Clause of the Constitution. See U.S. Const. Art. IV § 1, cl. 1. The Defendants cite the decisions of the United States Supreme Court in Alaska Packers and Pacific Employers to support their argument. However, the Supreme Court's decisions in Alaska Packers and Pacific Employers only held that California could, without

violating the Full Faith and Credit Clause, extend its workers' compensation benefits to injured employees who either formed their contracts in California or were injured in California. The Court did not hold that the Full Faith and Credit Clause is offended *unless* California can extend its workers' compensation benefits without restraint. Similarly, Thomas v. Washington Gas Light Co., 448 U.S. 261, 285-86 (1980), only held that the Full Faith and Credit Clause would not preclude successive workers' compensation awards in different states. It did not hold that the Full Faith and Credit Clause required the application of multiple states' workers compensation regimes. Therefore, the Award violates the Full Faith and Credit Clause only if the Players can show that the Clause "guarantees" them the right to pursue the claims in California. See Matthews, 688 F.3d at 1116-17 ("Because [plaintiff] has not shown that the Full Faith and Credit Clause guarantees California's right to apply its law *on the facts of this case*, he has not established that the arbitrator recognized yet chose to ignore 'well defined, explicit, and clearly applicable' law.").

      Here, the Players have not shown that the Full Faith and Credit Clause requires the application of California law here. The Players allege that their injuries are the cumulative result of playing professional football for the Falcons, but the Players played only four of 186 games in California. As discussed, the Players' tenuous connection with California may not even implicate the state's workers' compensation

system. On the other hand, the Players have extensive contacts with Georgia, including playing and practicing in Georgia as well as contracting for Georgia benefits. None of the authorities proffered by the Defendants requires the application of the law of a forum other than Georgia. Given the Players' extensive contacts in Georgia, the Court concludes that enforcing the Award will not violate the Full Faith and Credit Clause.

## IV.  Conclusion

For the reasons set forth above, the Plaintiffs' Motion to Confirm the Arbitration Award [Doc. 27] is GRANTED and the Defendants' Motion to Vacate the Arbitration Award [Doc. 16] is DENIED.

SO ORDERED, this 5 day of November, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge